The People, ex rel. John H. Emerick, Appellant, *v.* The Board of Fire Commissioners of the City of New York, Respondent. ·

It was the legislative purpose in adopting the provision of the New York charter of 1873 (§ 76, chap. 335, Laws of 1873), creating and describing the fire department, to organize but three bureaux, and that number cannot be increased save by express statutory provision.

The provisions of said charter defining the powers and prescribing the duties of the board of fire commissioners (§§ 28, 77, 79, 118) do not confer upon it any power to create additional bureaux.

Accordingly *held,* that the "superintendent of telegraph" was not the "head of a bureau;" also, that he was not "a regular clerk" within the meaning of the provision of said charter (§ 28), declaring that the power of said board shall not be exercised in respect to a person holding either of those positions "until he has been informed of the cause of the proposed removal, and has had an opportunity of making an explanation;" and that the relator, who was removed by said board from the place of such superintendent without notice, could not legally question the action of the board.

(Argued May 9, 1881; decided October 4, 1881.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made December 17, 1880, affirming an order of Special Term, which affirmed, upon *certiorari,* the proceedings of defendant in removing the relator, without notice, from the position of "superintendent of telegraph." (Reported below. 23 Hun, 317.)

*Charles P. Miller* for appellant. The board of fire commissioners had power, under the charter of 1873, to create bureaus other than those specified in the charter. (Laws of 1873, chap. 335, §§ 28, 77, 79.) The relator was illegally removed from office, and contrary to the provisions of section 28 of the charter of 1873. (*People, ex rel. Munday,* v. *The Fire Com'rs,* 72 N. Y. 445, 448; Brown's Legal Maxims [4th edition, 6th American edition], 481, marginal, 627; *Barton* v. *Himrod,* 8 N. Y. 493; *Saunders* v. *Evans,* 8 H. L. Cas. 729; *Pooler* v. *N. Y. C. R. R. Co.,* 16 N. Y. 322;

*Behan* v. *The People*, 17 id. 516.)    The relator was a regular clerk within the meaning of those words in section 28 of the charter. (*The People ex rel. Simms* v. *The Fire Com'rs*, 73 N. Y. 437; *Haines* v. *The Judges of Westchester*, 20 Wend. 625.)

*D. J. Dean* for respondent.    The commissioners of the fire department had power to remove the relator from office without prior notice of cause unless he was a head of bureau or regular clerk.    (Laws of 1873, chap. 335, p. 491.)    If any fact has been omitted from the return which is important to determine the *status* of the relator, he should move for a further return, but the court cannot go behind the return to the writ of *certiorari*, to determine the character of the position or office from which the relator was removed. (*People, ex rel. Sims*, v. *The Fire Com'rs*, 73 N. Y. 437; *Haines* v. *The Judges of Westchester*, 20 Wend. 625; *Rawson* v. *Adams*, 17 Johns. 131; ———— v. *Cowper*, 6 Mod. 90; *People* v. *Powers*, 19 Abb. 99.)    The proviso requiring notice of cause to be given to heads of bureaus, prior to removal from office, does not aid the relator.    (Laws of 1873, pp. 484–522, §§ 19, 26.)    The fire commissioners have no power to create bureaus in their department.    (Laws of 1849, chap. 187, § 19; Laws of 1857, vol. 1, chap. 446, p. 884, § 28; Laws of 1870, vol. 1, chap. 137, p. 391, § 102; Laws of 1870, chap. 137, § 82; *People, ex rel. Sims*, v. *The Fire Com'rs*, 73 N. Y. 440; *McCluskey* v. *Cromwell*, 11 id. 593; Sieber's Polit. and Le Hermeneutics, 87; 2 Ruth. Inst,. chap. 7, § 2; Story's Common Const., 1 392; *Purdy* v. *The People*, 4 Hill, 384; Smith's Statutes, etc., § 478; *Waller* v. *Harris*, 20 Wend. 561; *Newell* v. *The People*, 3 Seld. 97.)

FOLGER, Ch. J.    The relator was in place under the municipal government of New York city, by the title of "superintendent of telegraph," in the fire department.    He was removed from that place by the board of fire commissioners, without prior notice of the cause for removal.    He has no

ground of legal complaint, unless he was a "head of a bureau," or a "regular clerk." So far as the title of his place goes he was neither. It is claimed that the duties of his office were such as that he was one or the other.

*First.* As to his being a head of bureau. The charter of 1873 (Chap. 335, Laws of that year, pp. 484, 491), provides with minuteness for the organization of the fire department. It provides for a board of three persons to be the head of it. It provides for three bureaux and it assigns to the board and to each of the bureaux its peculiar duties. In the range of the duties thus assigned there would seem to be included all that would naturally fall within the purview of a fire department. The inference is strong then, that the legislature did not anticipate a need of other head of the fire department or of other bureaux. It has said that the board shall consist of three persons; surely it would need express provision of law, concurrent or subsequent, to increase it to four persons. It has said, that there shall be three bureaux, and has divided between them all the needful powers and duties, for the practical operation of the department. Does it not as much need like express provision of law to add to the number of bureaux? Besides that, so far as telegraphing adds to the efficiency of the department, it must be mainly, in that it assists in the prevention and extinguishment of fires, by giving prompt notice of the breaking out of them, or of matters of suspicious import in any locality. Any thing else than these must be incidental and of convenience only. These are clearly in the scope of powers and duties given to the bureau first named in the act. Those incidental and convenient are connected with the board, or with all the bureaux alike. There is naught in them that shows a need of a separate bureau. We are of the opinion then, judging alone from the section of the act (§ 76), that creates and describes the fire department, that it was the legislative purpose that there should be three bureaux in it and no more. If there is no other existing provision of law for bureaux in it, more than three, we must hold that it is restricted to that number.

It is claimed that power is given by the act to the board to create bureaux, and sections 28, 77, 79 are cited.   Section 28 gives power to prescribe the number and duties of subordinate officers and employees.   But this is no more than an authority to subdivide the duties of each bureaux, as those bureaux are established and those duties divided by section 76 (*supra*).   It gives power also to consolidate two or more bureaux.   Plainly, this is not an authority to increase the number.   It gives power to change the duties of any bureau.   Plainly, this is not an authority to increase the number.   Rather, these provisions induce the belief that the legislature meant not to authorize an increase of number, and gave these powers so as to meet difficulties that should arise in the workings of the system.   Section 77 gives power to prescribe rules and regulations for the government and discipline of the department.   We fail to see therein authority for an increase of number of bureaux.   Section 79 gives to the board all the powers conferred by chapter 249 of the Laws of 1865, not inconsistent with the act of 1873. We are not sure that a power to increase the number of bureaux if given by that chapter would not be inconsistent with the explicit provision of section 76.   But we do not find in it any express authority to establish bureaux.   Moreover, as we find in the act (Chap. 187 of 1849, p. 278, § 19), and in the charter of 1857 (Chap. 446 of 1857, vol. 1, p. 874, § 28), and in that of 1870 (Chap. 137 of 1870, vol. 1, p. 391, § 102), the power to create bureaux was immediately or ultimately in the common council, to which effect is also section 90 of the charter of 1873.   We do not think that the power so to do is lodged in the board of fire commissioners by section 79 (*supra*).   Section 118 of the charter of 1873 continues in the department the same powers and duties as theretofore.   But as we have seen, the charters preceding that of 1873 (of 1849, 1857, and of 1870) gave no such power; on the contrary, bestowed it on the common council.   Section 87 empowers the commissioner of taxes and assessments to regulate and abolish subordinate offices and bureaux.   The power to regulate is not power to create, nor is the power to abolish.   And the fact

that there are no bureaux created by the act of 1873 in the department of taxes and assessments is rather an evidence of carelessness in drafting or passing the act, than an overpowering implication of a power given to create bureaux. That the powers given and the duties imposed upon the position held by the relator were great, and that he was directly responsible to the board, rather than to the head of a bureau, is not conclusive. If the board gave it powers and duties greater than belonged to it, the law is not changed thereby. That provides for three bureaux and only three, and all of them are in existence, without counting in this place, and each has duties to do which are assigned to it by the act. The board cannot by its action create a new bureaux by indirection.

It is our view of the charter of 1873 that it did not empower the board of commissioners of the fire department to create another bureau than the three designated by the act. As those three were and are in existence, either that board had no power to make the place filled by the relator with the scope of duties and powers given to it, or if it had that power, it did not, by the use of it, create a bureau. It follows that the relator cannot question the act of his removal, on the ground that he is the head of a bureau.

*Second.* As to his being a regular clerk. There were, doubtless, among the duties of his place, some that were clerical in their nature. He was obliged to keep a record, in form for reference, of the business that went through his office, and to furnish quarterly returns to the board. But the weight of his duties and powers were not clerical. He had supervision of others, and the power to give orders and directions to them. His place was well designated by the title the board gave to it, that of "superintendent of telegraph." It required the exercise of other qualities than those needed in a simply clerical position. It was doubtless higher in degree and in demands upon the faculties than that of a regular clerk, and we can see not why, if it was in the prevision of the legislature, it should not have been as exempt from removal without notice as that of a regular clerk. But as we do not think that it falls within the

meaning of the term a regular clerk any more than of that of head of a bureau, we do not conceive that the relator can legally question the action of the board. That has power to remove, without showing cause, all subordinates save heads of bureaux, or regular clerks.

The judgment should be affirmed.

All concur.

Judgment affirmed.