## PEOPLE ex rel. BOWERS v. DALTON.

(Supreme Court, Special Term, New York County. March, 1898.)

1. MANDAMUS—EFFECT OF RETURN.
On the return of an order to show cause why mandamus should not issue to compel relator's reinstatement in a public office, allegations of the petition and moving papers, not denied, must be taken as true.

2. MUNICIPAL CORPORATIONS—REMOVAL OF OFFICER.
Where no statutory restriction exists, the rules and regulations of the civil service act do not prevent the head of a department of a municipal corporation from removing a subordinate at pleasure.

3. SAME—DURATION OF OFFICE.
Under Const. art. 10, § 3, providing that, when the duration of an office is not provided by the constitution or by law, it shall be held during the pleasure of the appointive authority, where such authority is conferred in general terms, without restriction, the power of removal at pleasure impliedly exists, unless restricted by law.

4. SAME—CONSTRUCTION OF CHARTER.
New York City Charter 1897, § 1536, provides that subordinates, not subject to removal without cause, shall continue to hold their respective positions without prejudice, and gives to the head of every department, having power to appoint, the power to remove his subordinates, subject to restrictions, if any, thereinbefore prescribed. Section 1543 gives power to the heads of all departments to appoint and remove all subordinates, except as otherwise specially provided, without reference to tenure of office, but provides that no regular clerk or head of a bureau shall be removed until he has been permitted to make an explanation. Section 468 provides that the

head of the department of water supply shall be called the "Commissioner of Water Supply." *Held,* that a foreman of repairs in the bureau of the chief engineer under the old municipality, who had ·been assigned to the same position in the department of water supply under the new municipality, could be removed by the commissioner at pleasure, without a hearing.

5. SAME—WHAT LAW GOVERNS.

One's right to a public office is determined by the law existing at the time of his removal, or of the hearing of his application for a mandamus to compel reinstatement.

Application in the name of the people, on the relation of Frank K. Bowers, against William Dalton, as commissioner of water supply of the city of New York, for a writ of mandamus, or, in the alternative, a writ of certiorari, to secure relator's reinstatement in office.　Denied.

W. R. Spooner, for relator.

John Whalen, Corp. Counsel (Terence Farley, of counsel), for respondent.

FREEDMAN, J.　This is an application requiring the respondent to show cause why a peremptory writ of mandamus should not issue against him, commanding him to reinstate the relator as foreman of Company 6 in the department of water supply, or, if mandamus be not allowed by the court, why an order should not be entered herein allowing the issuance of a writ of certiorari to review the determination of the respondent in dismissing the relator from service.　Briefly stated, the facts alleged in the petition are that on or about the 27th day of May, 1896, the relator was appointed foreman of repairs, Company 6, in the bureau of chief engineer of the Croton Aqueduct, department of public works, in the municipal corporation then known as the "Mayor, Aldermen, and Commonalty of the City of New York," at the rate of $5 per day as foreman, and $2.25 per day for horse and wagon, which said appointment took effect June 1, 1896; that, pursuant to section 1536 of the new charter of 1897, the mayors of the various cities met, and adopted a detailed plan, which provided for the apportionment between the several public departments, bureaus, and offices, and the assignment to service in said public departments, bureaus, and offices, respectively, of subordinates and employés in the several branches of the public service in each of the several municipal and public corporations constituted by the charter, which said plan received the approval of the mayor of the city of New York, as to persons in the service of the mayor, aldermen, and commonalty of the city of New York, and which said plan was subsequently published in the City Record on January 14, 1898; that in and by said plan all foremen in the bureau of the chief engineer of the department of public works of the city of New York were assigned to the same positions in the department of water supply in the city, as constituted by the new charter, and that by reason of said apportionment relator was assigned to perform the same services in the same part of the city, to wit, at Fordham, in the borough of The Bronx, and to hold the same relative rank or position in the city constituted by the new charter as he performed and held at the time said plan of apportionment and assignment was determined upon; that on or about the 4th day of

January, 1898, the respondent discharged the relator from his position as foreman, without any charges being preferred against the relator, or without any hearing being accorded him, or an opportunity to make an explanation, and without cause being assigned therefor, and without any cause whatsoever; that the relator protested against said action of the respondent, and made a written demand upon him, which demand was dated the 7th day of January, 1898, to be reinstated to the position from which he has been removed, on the ground that "such discharge is in violation of the provisions of the constitution of this state, the laws of this state, and the civil service rules and regulations"; and that notwithstanding said demand the respondent has failed and neglected to reinstate the relator. Upon the return of the order to show cause, the respondent did not deny any of the allegations of the petition or moving papers, and consequently all of said allegations must be taken as true. It may also be assumed, as claimed by the relator, that at the time of his appointment the office to which he was appointed was in the classified service, under the rules and regulations of the civil service. But it does not appear from either the petition or any of the moving papers that the relator is an honorably discharged soldier or sailor of the late War of the Rebellion, or that he is an honorably discharged volunteer fireman, or that he is a regular clerk or head of a bureau in any of the departments of the municipality known as the "City of New York." Having failed to bring himself within any of the classes thus excepted, I cannot perceive how the rules and regulations of the civil service act protect him. Regulation 44 of the civil service rules and regulations (page 36 of the Thirteenth Annual Report of the New York City Civil Service Commission for the Year 1897) provides as follows:

"Subject only to the qualifications required to be ascertained in accordance with these regulations, the power of appointment and the responsibility of selection are in all cases in the appointing officer. The power of any officer to remove is not impaired by anything contained in these regulations."

Besides, it has been expressly adjudicated that the civil service laws, where no statutory restriction exists, do not prevent the head of a department from removing a subordinate at his pleasure. Heard v. Commissioners; People v. Grant (Sup.) 13 N. Y. Supp. 676. The constitution certainly affords no redress to the relator, as it has been held (citing the constitutional provision) that where the power of appointment is conferred in general terms, and without restriction, the power of removal, in the discretion and at the will of an appointing power, is implied, and always exists, unless restricted and limited by some provision of law. Const. art. 10, § 3; People v. Barker, 5 App. Div. 227, 39 N. Y. Supp. 140, affirmed 150 N. Y. 570, 44 N. E. 1127; People v. Robb, 126 N. Y. 180, 27 N. E. 267. As neither the constitution nor the civil service or veteran acts protect the relator, the merits of his claim depend entirely upon the provisions of the new charter. Sections 1536 and 1543 of that instrument are the only ones requiring consideration here. Section 1541 has been referred to several times in the brief of the relator, but, on turning to it, it will be found that it relates in no way or manner to the question now presented. Section 1536, which relates to the retention of office by clerks in the public

employ in the territory consolidated, first provides that all the clerical and other subordinate forces, including janitors of public schools, not subject to removal without cause, * * * shall continue to hold their respective positions, without prejudice or advantage, * * * except that the clerks and subordinates of departments that are abolished or reconstructed by this act, under the same or under other names, shall continue in the service of the said ctiy, under the jurisdiction of the appropriate department, subject, nevertheless, to removal in accordance with the provisions of this act for cause, or to abolish unnecessary positions. Under this provision it is claimed by the relator that his removal was illegal, because made without cause, and not for the purpose of abolishing an unnecessary position. But the difficulty with this contention is that the provision applies only to employés who before the consolidation could be removed only for cause. These were continued in office, subject to be transferred, and protected by the provision that thereafter they should not be liable to be removed except for cause, or whenever it was necessary to abolish an unnecessary position. The relator does not belong to this class. Moreover, section 1536 further provides as follows:

"The head of every department, and every other officer by this act given power to appoint, remove and fix and regulate the salaries of his subordinates, appointees and employés, shall have power upon assuming office, or at any time thereafter, to remove any person assigned to service under him by said plan, and to fix and regulate, within the limits of his appropriation and subject to the restrictions, if any, hereinbefore prescribed, the salaries and compensation of his said subordinates, appointees and employés."

This provision confers upon the head of every department, and every other officer having power to appoint, the power of removing at pleasure every subordinate, appointee, or employé whose term of employment is not specially protected by some other statutory provision. As to all such unprotected subordinates, appointees, and employés, the appointing power seems to possess unrestricted power of removal, although in making appointments the mode of selection has been left surrounded by prescribed statutory safeguards and rules promulgated in conformity therewith. With the restrictions under which appointments must be made, I have nothing to do in this case.

The further contention of the relator, that the provision last referred to as contained in section 1536 does not apply to the commissioner of water supply, because no power of appointment has been conferred upon him, is clearly untenable, for the reason that by section 1543 the power is given to the heads of all departments to appoint and remove all clerks, officers, employés, and subordinates in their respective departments, except as otherwise specially provided, without reference to the tenure of office of any existing appointee. The same section then goes on and says: "But no regular clerk or head of a bureau shall be removed until he has been allowed an opportunity of making an explanation." Here, again, the relator is not within the exception. That the commissioner of water supply is the head of a department, within the meaning of section 1543, may be seen by reference to section 468, which provides that the head of the department of water supply shall be called the "Commissioner of Water Supply."

Inasmuch, therefore, as the relator did not stand protected by some special provision or rule of law, it was competent for the commissioner of water supply to remove him without any cause whatever, and without abolishing the position held by him as an unnecessary one. At least, such was the case at the time of the removal, and at the time of the hearing of the application for a mandamus. Any subsequent change in the law cannot be considered now.

For the foregoing consideration, the application of the relator for a peremptory writ of mandamus must be denied, with costs. The question involved having been disposed of as a question of law, the application for a writ of certiorari must be denied as unnecessary.