R. S. Barlow, for appellants.
W. M. Rosebault, for respondent.

PER CURIAM.　Order affirmed, with costs and disbursements, upon opinion of the court at special term.

---

(1 App. Div. 68.)
PEOPLE ex rel. DEAN v. BROOKFIELD, Commissioner of Public Works.

(Supreme Court, Appellate Division, First Department. January 24, 1896.)

1. OFFICERS—REMOVAL—CHIEF OF BUREAU.
　　The superintendent of street improvements, declared by Consolidation Act (Laws 1882, c. 410) § 317, subd. 4, to be chief officer of a bureau, cannot be discharged on mere notice of an intended consolidation of his office with another office, and request for his resignation; section 48 declaring that no regular clerk or head of a bureau shall be removed till he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation.

2. CERTIORARI—MODIFYING DETERMINATION REVIEWED.
　　Code Civ. Proc. § 2141, declaring that the court, on the hearing of a cause on certiorari, may modify the determination reviewed, does not authorize the court to declare an illegal discharge of an officer valid, as of a later date, because of the consolidation at such time of his office with another.

Certiorari by William M. Dean against William Brookfield, commissioner of public works.　Judgment for relator.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

C. Blandy, for relator.
W. L. Turner, for respondent.

PATTERSON, J.　This cause comes before the court on a writ of certiorari to review the action of the commissioner of public works of the city of New York in discharging the relator from a position he held in that department from the year 1886 to the 31st of July, 1895, on which last-mentioned day he was dismissed from his position, by a communication then sent him by the respondent, and which contained the following announcement: "Your services as superintendent of street improvements will not be required after this date."

The relator was head of a bureau within the meaning of section 48 of the consolidation act.　He was the superintendent of street

improvements. By section 317 of the consolidation act (subdivision 4) it is provided that there shall be created a bureau for grading, flagging, curbing, and guttering streets, the chief officer of which shall be called the "Superintendent of Street Improvements," and that is the position the relator filled at the time referred to. Section 48 of the consolidation act, to which allusion has been made, also provides that no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal and has been allowed an opportunity of making an explanation, a true account of which is to be entered on the record of the department. On the 9th of July, 1895, the commissioner of public works sent to the relator a letter asking for his resignation, and stating that it had been determined to abolish the office of superintendent of street improvements on and after August 1, 1895. It is claimed by the respondent that this determination to abolish the office referred to was arrived at from reasons of economy, and that he found it expedient to abolish the distinctive office of superintendent of street improvements, and to transfer the performance of the duties of that office to another bureau, namely, that of the water purveyor.

It will be observed that there was no charge made against the relator, and that there was no ground indicated to him as that upon which he was to be discharged. By the letter of July 9th, no information was given to him of the reason of the contemplated abolition of his office; and in the communication of July 31st there was simply a notice that his services were dispensed with. Under the provisions of the statute, the relator was clearly entitled to distinct notification, and to a hearing, and could not summarily be dismissed without it. It was competent for him to claim, before the commissioner, that there had been no consolidation; that he could not be discharged in mere anticipation of that consolidation of the offices; and that no action could be taken to remove him until after a consolidation was effected, if consolidation were permissible. That it was permissible seems to result from another provision of section 48, which enacts that any head of a department may, with the consent of the board of estimate and apportionment, consolidate any two or more bureaus established by law, and may change the duties of any bureau. But it appears by the return that application was not made by the commissioner of public works for authority to make the consolidation until the 5th of August, 1895, and that a resolution was not passed giving the authority so to do until the 30th day of August, 1895. Therefore, by the return it appears that the dismissal of the relator was made merely in contemplation, and not as a consequence, of the consolidation of the two bureaus. His independent bureau still existed, and he was clearly entitled to the office, and to discharge his duties, at the time he was dismissed by the commissioner of public works.

With what transpired subsequent to the dismissal of the relator we have nothing to do, for it does not affect the lawfulness of the act of the commissioner of public works at the time that act was committed.

It is claimed by the respondent that the dismissal would become operative on the 31st day of August, 1895, and that the relator would, therefore, have merely a claim for one month's salary; and it is suggested that, under the provisions of section 2141 of the Code of Civil Procedure, the court has power to modify the commissioner's determination so as to make it binding on the relator from the date last mentioned.  But we do not consider this provision as authorizing us to adjudicate the rights of the relator upon any state of facts arising after the unlawful action was taken by which he was deprived of his office.

It is sufficient, for all purposes of this case, that the relator was unlawfully discharged, and is entitled to be restored to the position as of the 31st day of July, 1895, with the costs of this proceeding. All concur.